IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VINCENT MITCHELL BALLARD,<br><br>    Defendant. | No. 4:18-cr-00171–JEG<br><br>O R D E R |

This matter is before the Court on a Motion to Suppress filed by Defendant Vincent Mitchell Ballard (Ballard). The Government resists. A hearing was held on the matter on October 25, 2018. Attorney F. Montgomery Brown represented Ballard. Assistant United States Attorney Ryan Leemkuil represented the Government. The matter is fully submitted and ready for disposition.

**I.  BACKGROUND**

The Court makes the following findings of fact for the purposes of the pending motion. In the summer of 2018, Officer Michael Fong (Officer Fong) of the Des Moines Police Department (DMPD) was investigating a complaint about a high volume of short-term traffic at 2005 27th Street in Des Moines. By June 2018, Officer Fong verified through the Iowa Department of Transportation records and a secure law enforcement database that 2005 27th Street was a residence and that Ballard lived there. Officer Fong also learned that Ballard had a valid and outstanding arrest warrant, and he shared this information with other DMPD teams. In July 2018, Officer Fong received additional information from a confidential informant and other DMPD teams connecting Ballard to potentially criminal activity.[1]

---

[1] During the suppression hearing, Mr. Brown challenged the credibility of the information Officer Fong received in July 2018, arguing that it was insufficient to establish probable cause to support the search warrant. The Court asked Mr. Brown whether Ballard was now challenging the sufficiency of the search warrant affidavit, as that issue had not been raised in his motion to suppress. Mr. Brown clarified that the sufficiency argument was tied to the argument that the

Around 7:19 p.m. on July 24, 2018, a special enforcement team (SET) member, Officer Garrett, observed Ballard on the front porch of 2005 27th Street while conducting surveillance of the residence. Officer Garrett coordinated with other SET officers (Officers Dempsey, Hume, Minnehan, and Steinkamp) to approach Ballard. Officer Minnehan testified that as the officers approached, Ballard fled into the residence. Officer Steinkamp forced the front door of the residence open to allow the officers to follow. The officers were unable to find Ballard on the main floor of the residence, but they did view methamphetamine pipes and bongs in plain view on the kitchen table.

Continuing their search for Ballard, the officers entered the basement of the residence. The basement appeared dark and had multiple rooms. Officer Minnehan testified that he entered a room that contained a bed, an ottoman, and several other pieces of furniture. Officer Minnehan said that he looked under the bed, which he believed, based on his training and experience, could conceal a man beneath its frame. Instead of finding Ballard underneath the bed, Officer Minnehan observed two plastic baggies containing a substance that appeared to be methamphetamine. Officer Minnehan did not touch the baggies, move any part of the bed, or look under the ottoman. Officer Minnehan stated that his training and experience taught him that individuals often hide underneath beds. Based on what Officer Minnehan could see in the basement room, he testified that he believed that someone could fit underneath the bed, but not underneath

---

information acquired during the unreasonable search was fruit of the poisonous tree and should be suppressed, making the remainder of information provided in the affidavit, including the information provided by the informant, insufficient to establish probable cause. This argument is mooted by the Court's conclusion herein that the search was not unreasonable under the Fourth Amendment, and therefore the evidence discovered during that search need not be suppressed. Thus, even if a challenge to the informant information was upheld, other portions of the search warrant application were sufficient to establish probable cause. See United States v. Swope, 542 F.3d 609, 616 (8th Cir. 2008) (finding that although portions of a warrant application are tainted and must be excised, the untainted portions can stand as sufficient to support a finding of probable cause).

the ottoman. The record contains photo and video exhibits showing the basement bedroom, the bed that Officer Minnehan looked underneath, and the space underneath the bed. The Court finds Officer Minnehan's testimony consistent with the exhibits, which reveal the actual space between the bed and the floor.

Officer Minnehan and the other officers continued their search for Ballard in the basement, eventually finding Ballard behind a bar in an adjacent room. Officer Minnehan detained Ballard at that time. After Ballard was given Miranda[2] warnings, he made several statements to Officer Fong.[3] Four other individuals were also detained.

Later in the day on July 24, 2018, officers obtained and executed a search warrant for 2005 27th Street, included in its scope were the house, the garage, and multiple vehicles on the property. The warrant application contained details of the entry into Ballard's home earlier that same day, including the officers' observations of the pipe and bongs on the kitchen table, as well as the two baggies under the bed in the basement. Pursuant to the warrant, officers found approximately 47 grams of methamphetamine in two baggies under the basement bed, approximately 100 blue tablets marked "100," working digital scales, cell phones, IRS paperwork in Ballard's name, and used drug paraphernalia.

On August 29, 2018, a grand jury returned a one-count indictment against Ballard. The indictment charges Ballard with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On October 10, 2018, Ballard filed a motion to suppress evidence and statements stemming from the July 24, 2018 entry of his home. The Government filed a response in opposition on October 17, 2018.

---

[2] Miranda v. Arizona, 384 U.S. 486 (1966).

[3] Ballard moves to suppress these statements as fruits of the unlawful search under the bed. Neither argument nor evidence regarding the content of the statements was offered at the suppression hearing. The statements were not used to support the search warrant.

## II. DISCUSSION

Ballard moves to suppress physical evidence and statements stemming from the search of his home. Although Ballard originally argued that the initial entry into the residence was unlawful, at the suppression hearing, he conceded that argument under <u>United States v. Clayton</u>, 210 F.3d 841, 843 (8th Cir. 2000) ("A valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling.").[4] Ballard argues, however, although Officer Minnehan lawfully entered the residence, it was unlawful for Officer Minnehan to look underneath the basement bed. Thus, Ballard argues, all references to contraband observed under the bed must be excised from the application for the search warrant and the search warrant would therefore fail for lack of probable cause.

The Government argues that the initial entry into the home was lawful, and that, once lawfully in the home, officers could look anywhere Ballard may reasonably be found, including under the basement bed.

### A. Constitutionality of Observation of the Contraband

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When inside a home, searches and seizures without a warrant are presumptively unreasonable. <u>Payton v. New York</u>, 445 U.S. 573, 586, (1980). However, "[a] valid arrest warrant carries with

---

[4] Applying <u>Clayton</u> to the present case, it is clear the officers legally entered Ballard's residence because they had knowledge of his valid arrest warrant, and had a reasonable belief both that Ballard resided at the residence and was currently present at the residence. See <u>Clayton</u>, 210 F.3d at 843; <u>see also</u> <u>United States v. Glover</u>, 746 F.3d 369, 373 (8th Cir. 2014) (noting that an officer's reasonable belief is based upon the totality of the circumstances known to the officer prior to entry).

it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling." Clayton, 210 F.3d at 843. An arrest warrant cannot justify a full-blown search of the arrestee's home, Chimel v. California, 395 U.S. 752, 763 (1969), for fear of disregarding the Fourth Amendment's disdain for the use of general warrants, id. at 760-61. Therefore, officers lawfully present in a home to make an arrest remain in a lawful position from which to observe evidence as long as they look only in places where a person could be hiding. See Maryland v. Buie, 494 U.S. 325, 328 (1990) (reiterating that while pursuing a suspect in the execution of an arrest warrant, the Fourth Amendment permits a protective sweep of premises "if the searching officer possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed] the officer in believing, that the area swept harbored an individual posing a danger to the officer or others" (alterations in original) (internal quotation marks and citations omitted)). "Possessing an arrest warrant and probable cause to believe [the defendant] was in his home, the officers were entitled to enter and to search anywhere in the house in which [the defendant] might be found." Id. at 332-33.

Ballard concedes the officers were lawfully present to execute an arrest warrant and does not assert that a seizure of evidence took place during or after the search. Accordingly, this case is not on all fours with either the application of the protective sweep or the plain view doctrines. See, e.g., United States v. Ford, 888 F.3d 922, 925 (8th Cir. 2018) (analyzing under the protective sweep doctrine, a challenge to the scope of a protective sweep incident to arrest); United States v. McLevain, 310 F.3d 434, 439 (6th Cir. 2002) (analyzing under the plain view doctrine, the reasonableness of the seizure of evidence during a search in the execution of a valid arrest warrant).[5]

---

[5] "The protective sweep doctrine allows officers to make a 'quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'"

Eighth Circuit precedent applying the protective sweep and plain view doctrines supports the conclusion that it was objectively reasonable for Officer Minnehan to look under the bed when searching for Ballard. In Ford, 888 F.3d at 925, officers entered a residence to execute an arrest warrant. While searching one of the bedrooms, an officer moved the bed from the wall, unveiling a gun. Id. The defendant moved to suppress arguing, inter alia, that the scope of the protective sweep violated the Fourth Amendment. Id. at 925. The court held that pulling the bed from the wall during the search was reasonable in trying to find the defendant and that the gun the defendant had tossed under the bed was revealed in plain sight as a result. Id. at 928. In United States v. Parker, 412 F.3d 1000, 1002 (8th Cir. 2005), the court found no Fourth Amendment violation where an officer, reasonably concerned for his safety and the safety of his team during search for a federal fugitive, lawfully lifted up the mattress in a trailer home based on the officer's knowledge and experience that beds in trailers are often just mattresses covering storage areas, which are potential hiding places.

Cases from the Sixth Circuit are also instructive. In McLevain, 310 F.3d at 439 (6th Cir. 2002), the court was considering the reasonableness of the seizure of evidence under the plain view doctrine. In that case, the officers were searching a residence for an individual named in the search warrant. Id. at 438. During their search, in plain view, the officers saw a twist tie and a cigarette filter under a bed in the house, and in the garage, they saw a spoon with residue in the sink and a bottle with liquid on the fireplace mantle. Id. An officer performed a field test on the

---

Ford, 888 F.3d at 927 (quoting Buie, 494 U.S. at 327). "Officers may always 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched,' and may sweep beyond that if they have a reasonable belief, based on specific and articulable facts, that the area searched harbors a person posing a danger to officers or others." Id. (quoting Buie, 494 U.S. at 334).

The test for analyzing the plain view doctrine has four prongs: (1) the officers must be legally present, (2) the item seen must immediately appear to be evidence, (3) the item seized must actually be in plain view, and (4) the officers must have lawful access to the item. McLevain, 310 F.3d 434 at 439.

spoon residue, suspecting it was an illegal drug.  Id.  In applying the plain view doctrine, the court reasoned that the officers were legally present in the defendant's home to execute a valid search, and that their search being under the bed and in the garage——that is, "where a man could hide"—made the plain view objectively reasonable.  Id. at 438-39.  However, the court held that the field test of the residue constituted an unreasonable seizure because the items seen in plain view were not "intrinsically incriminating" and it was not "immediately apparent" the items were contraband.  Id. at 440-43.  In United States v. Flores, 193 F. App'x 597, 604 (6th Cir. 2006) (unpublished), the court held that an officer, who had been given consent to search for a fugitive in a third-party's home, need not "first measure how far the bed is off the floor and then determine whether a person could fit under it before actually looking" under the bed.

In this case, it is clear that the officers entering the home were lawfully in the home for the purpose of executing the arrest warrant.  Clayton, 210 F.3d at 843.  In order to make the arrest, the officers needed to find Ballard, who was the individual named in the warrant.  They were allowed, under the law, to look anywhere that Ballard might be.  Buie, 494 U.S. at 330.  Upon entering the darkened basement, and seeing a bed, it was objectively reasonable for Officer Minnehan to assess that Ballard could be under the bed.  While neither party argued the exact measurements of the clearance between bed and floor, the Court finds that the bed appeared to be raised off of the floor.  Even if the gap was narrow, it was objectively reasonable for Officer Minnehan to look under the bed.  The Court finds that it was objectively reasonable under the Fourth Amendment for Officer Minnehan to believe an individual could be under the bed.  His observation of the contraband while lawful searching that location was properly used in support of the application for search warrant.

7

Having concluded the officers' search for Ballard under the bed was objectively reasonable, the Court does not consider the alternative argument the Government raises under <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984).

### III. CONCLUSION

The Court concludes that the officers were in a lawful position when they observed drugs and drug paraphernalia in the Defendant's home on July 24, 2018. Accordingly, Defendant's Motion to Suppress, ECF No. 26, must be **denied**.

**IT IS SO ORDERED.**

Dated this 13th day of November, 2018.

*/s/ James E. Gritzner*
JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT